**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHABAD LUBAVITCH OF | : | CIVIL ACTION NO. |
| LITCHFIELD COUNTY, INC., and | : | 3:09-CV-1419 (JCH) |
| RABBI JOSEPH EISENBACH, | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | |
| BOROUGH OF LITCHFIELD, | : | JUNE 20, 2011 |
| CONNECTICUT, ET AL. | : | |
|     Defendants. | : | |

**RULING RE: DEFENDANTS' MOTIONS TO DISMISS (Doc. Nos. 88, 141) AND FOR JUDGMENT ON THE PLEADINGS (Doc. No. 101)**

## I.   INTRODUCTION

Plaintiffs, Chabad Lubavitch of Litchfield County, Inc. ("the Chabad"), and Rabbi Joseph Eisenbach, bring this action against defendants, the Borough of Litchfield, Connecticut ("the Borough") and the Historic District Commission of the Borough ("the HDC") (collectively, "Borough defendants"); and Wendy Kuhne, Glenn Hillman, and Kathleen Crawford, members of the HDC (collectively, "individual defendants"), for declaratory relief and damages for injuries plaintiffs allegedly sustained as a result of the discriminatory activity of defendants.

Defendants have filed two separate motions with respect to plaintiffs' claims. Their first Motion to Dismiss (Doc. No. 88) is with respect to Rabbi Eisenbach.[1] Defendants argue that Eisenbach lacks standing, and they seek to have him dismissed as a party to this case pursuant to Fed. R. Civ. P. 12(b)(1).  Defendants' Motion for

---

[1] This Motion was originally brought by the individual defendants.  However, on May 16, 2011, the Borough defendants filed a Motion to Dismiss, joining the individual defendants' Motion.  See Doc. No. 141.

Judgment on the Pleadings (Doc. No. 101) challenges the constitutionality of the Religious Land Use and Institutionalized Person's Act ("RLUIPA") and also seeks judgment on the pleadings with respect to Counts One through Eight, Eleven, and Twelve, on the ground that these Counts do not satisfy the requirements of Fed. R. Civ. P. 12(b)(6).[2] <u>See</u> Fed. R. Civ. P. 12(c).

For the following reasons, the court grants defendants' Motion to Dismiss (Doc. No. 88) with respect to Rabbi Eisenbach. However, the court denies defendants' Motion for Judgment on the Pleadings (Doc. No. 101) with respect to Counts One through Eight, Eleven, and Twelve, and holds that RLUIPA is constitutional.

## II.    FACTUAL BACKGROUND

The Chabad is a religious corporation that was formed in 1996 by Rabbi Eisenbach. <u>See</u> Third Am. Compl. ¶ 9 (Doc. No. 54). According to its Certificate of Incorporation, the Chabad has one class of members, specifically "ordained Chassidic Rabbis." <u>See</u> Defs.' Mot. to Dismiss, Ex. 5. Rabbi Eisenbach appears to be the only current member. <u>See</u> Eisenbach Dep. 24:7-10 (Aug. 11, 2010).

In 2007, in order to accommodate a growing body of parishioners, the Chabad purchased a building located in the Borough ("the Property"). Third Am. Comp. ¶¶ 31-32. The Property was located in a historic district of the Borough. <u>Id.</u> at ¶¶ 46-47. In order for the Property to be suitable for its needs, the Chabad sought to modify the building and filed a Certificate of Appropriateness before the HDC, on or about October

---

[2] The court has previously denied a Motion to Dismiss Counts Nine and Ten. <u>See</u> Doc. No. 68.

18, 2007.[3]  See id. at ¶¶ 58-63.  After a series of public hearings, the HDC denied the Chabad's Certificate.  Id. at ¶¶ 60-61.

## III.     STANDARD OF REVIEW

### A.     Standard of Review Under Rule 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In assessing a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."  Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006).  The court, however, refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]."  APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003).

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint.  See Morrison, 547 F.3d at 170; see also Makarova, 201 F.3d at 113; Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). A court evaluating a Rule 12(b)(1) motion "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits."  Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

---

[3] The Chabad presented the application at a pre-hearing meeting on or about September 6, 2007, but did not formally file the Certificate until October.  See Third Am. Comp. ¶¶ 58-59.

B.     Standard of Review Under Rule 12(c)

"The legal standards for review of motions pursuant to Rule 12(b)(6)and Rule 12(c) are indistinguishable." DeMuria v. Hawkes, 328 F.3d 704, 706 n.1 (2d Cir. 2003). In deciding such motions, the court takes the allegations of the Amended Complaint as true and construes them in a manner favorable to the plaintiffs. See, e.g., Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002). The court must draw all reasonable inferences in the plaintiffs' favor. See, e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005).

A motion for judgment on the pleadings for failure to state a claim tests only the adequacy of the Complaint. See United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiffs' pleading obligations. See Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006). Instead, plaintiffs are obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd on other grounds sub. nom. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S.Ct. at 1949.

IV.     **DISCUSSION**

A.     Defendants' Motion to Dismiss (Doc. No. 88)

Defendants ask this court to dismiss the claims brought by Rabbi Eisenbach, on

the ground that he lacks standing to bring suit. Defendants argue that Rabbi Eisenbach does not have a property interest sufficient to satisfy the requirements of RLUIPA and that he lacks any interest independent of the Chabad sufficient to maintain standing under any of plaintiffs' remaining claims. See generally Defs.' Mem. (Doc. No 88-1). The court agrees.

RLUIPA requires a plaintiff to hold some property interest that he has attempted to use and which has been threatened by the illegal conduct of the defendant. See 42 U.S.C. § 2000cc-5(5) (requiring a claimant to have "an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest"). Rabbi Eisenbach has no such interest. The Chabad is a religious corporation, which purchased the land in question and filed for the Certificate of Appropriateness. On the record before the court, Chabad is the only party with a "property interest." Eisenbach's involvement in the purchase and application appears to have been only as a member of the organization, or its agent, and, this cannot support his standing claim. See Cambodian Buddhist Soc. of Conn., Inc. v. Planning & Zoning Comm'n, 285 Conn. 381, 396-98 & n.9 (2008) (holding that president of religious organization lacked standing under RLUIPA, because he lacked a "traditional property interest" in the regulated property). Rabbi Eisenbach has not shown a plausible property interest or that he owns or leases the property.

Plaintiffs attempt to assert Eisenbach's standing under RLUIPA. They point to the fact that Eisenbach will use the facilities in question in various ways, including by

living in accommodations within the proposed structure. However, these uses clearly do not qualify as "property" interests.[4] Plaintiffs also mention that Eisenbach has "a right to place a mortgage lien" on the purchased property for his unpaid salary.[5] <u>See</u> Eisenbach Decl. ¶ 15, Feb. 18, 2011. A construction of "property interest" to extend to a creditor of a corporation is so clearly incongruous with the language and purposes of RLUIPA, it barely warrants addressing. Needless to say, Eisenbach's interest as a creditor of the Chabad who may use the property cannot suffice to create standing under the Act.

Plaintiffs' arguments with respect to Eisenbach's remaining claims are similarly misplaced. The Connecticut Supreme Court has prohibited claims under CFRA by individuals which are entirely derivative of claims brought by a religious corporation. <u>See</u> <u>Cambodian Buddhist Soc.</u>, 285 Conn. at 396 ("[T]he right to build [a] temple [cannot] be asserted independently by an individual member."). The generality of the language used by the Connecticut Supreme Court in <u>Cambodian Buddhist Society</u> suggests that the court should also apply this standing principle to plaintiffs' claims pursuant to the Connecticut Constitution. <u>See</u> Third Am. Compl. ¶¶ 114-22. Federal courts have, similarly, not found individual standing for claims under Section 1983 that

---

[4] The court rejects Rabbi Eisenbach's self-serving and unsupported claim that the rectory, if constructed, "belongs" to him. Eisenbach Decl. ¶ 10, Feb. 18, 2011. Plaintiffs produce no documentation supporting this ownership claim. The court does not doubt that Rabbi Eisenbach has an interest in seeing the rectory constructed. However, plaintiffs have not established by a preponderance that this interest is a "property interest," as required by RLUIPA.

[5] The court notes that plaintiffs failed to attach any documentation of this "right." It is unclear whether Eisenbach actually has a lien against the property in question and whether his "right" to assert one is legally defensible.

are "indirectly caused by harm to [a corporation] and therefore are not 'distinct' from those of the corporation." <u>Caravella v. City of New York</u>, 79 F. App'x 452, 452 (2d Cir 2003) (citing <u>Potthoff v. Morin</u>, 245 F.3d 710, 717 (8th Cir. 2001)). The court sees no reason not to also apply this standing principle to plaintiffs' claims under 42 U.S.C. §§ 1985, 1986. <u>See</u> Third Am. Compl. ¶¶ 100-13.

Plaintiffs make no serious attempt at distinguishing Eisenbach's claims from those of the Chabad. In fact, in plaintiffs' claim of injury in their Amended Complaint, they do not separately assert any injury on behalf of Rabbi Eisenbach. <u>See</u> Third Am. Compl. ¶¶ 64-65. Plaintiffs' allegations throughout their Complaint are based on the HDC's denial of the Chabad's Certificate of Appropriateness and injuries resulting from this denial. Any claims by the Rabbi are necessarily derivative of the Chabad's claims. Rabbi Eisenbach, therefore, lacks standing to bring suit in this case.

For these reasons, plaintiffs have failed to establish this court's subject matter jurisdiction over Rabbi Eisenbach's claims. Rabbi Eisenbach's claims are, therefore, dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

B.    <u>Defendants' Motion for Judgment on the Pleadings (Doc. No. 101)</u>

Defendants also move for judgment on the pleadings. <u>See generally</u> Defs.' Mem. (Doc. No. 101-1). They first argue that RLUIPA is facially unconstitutional, and, therefore, judgment should enter on Counts Six and Eight. <u>Id.</u> at 14-37. Defendants also argue that Counts One through Eight, Eleven, and Twelve fail to state claims upon which relief can be granted. <u>Id.</u> at 38-50. For the reasons that follow, the court does

not agree and denies defendants' Motion.

1.     Facial Constitutionality of RLUIPA

Defendants assert that section 2(a) (the "substantial burdens" provision) and

section 2(b)(1) (the "equal terms" provision) of RLUIPA are unconstitutional for a

number of reasons.  Defendants initially argue that Congress exceeded its authority

under both the Commerce Clause and the Fourteenth Amendment when it enacted

section 2(a).  Defendants further argue that section 2(a) of RLUIPA violates the

separation of powers and that section 2(b)(1) violates the Establishment Clause.  For

the following reasons, the court rejects each of these arguments.

a.     The Commerce Clause and the Fourteenth Amendment

Congress limited the scope of RLUIPA's "substantial burdens" provision to

several different circumstances, including cases in which "the substantial burden

affects, or removal of that substantial burden would affect, commerce with foreign

nations, among the several States, or with Indian tribes, even if the burden results from

a rule of general applicability."  42 U.S.C. § 2000cc(a)(2)(B).  In 2007, the Second

Circuit definitively decided that this particular application of RLUIPA was constitutional

pursuant to Congress's authority under the Commerce Clause.  See Westchester Day

Sch. v. Village of Mamaroneck, 504 F.3d 338, 354 (2d Cir. 2007).  The Westchester

Day decision was handed down well after the Supreme Court cases defendants ask this

court to apply, and indeed, it relies on those decisions.  See id. (citing United States v.

Morrison, 529 U.S. 598, 611-12 (2000); United States v. Lopez, 514 U.S. 549, 561

(1995)).  The court assumes, from the posturing of defendants' arguments, that they are preparing to ask the Second Circuit to reconsider its decision in <u>Westchester Day School</u>.  Interestingly, however, defendants have failed to state this explicitly and failed to even attempt to distinguish the Second Circuit case in their Commerce Clause section.  <u>See</u> Defs,' Mem. 31-33.

Nor does the court imagine that defendants could distinguish the <u>Westchester Day School</u> case.  The Second Circuit could not have been clearer in its decision.[6]  <u>See Westchester Day Sch.</u>, 504 F.3d at 354 ("[W]e now hold that, where the relevant jurisdictional element is satisfied, RLUIPA constitutes a valid exercise of congressional power under the Commerce Clause.").  In light of this precedent, this court must reject defendants' argument that Congress lacked the authority under the Commerce Clause to enact RLUIPA.

The facts of the instant case support a finding, as a matter of law, that any substantial burden on plaintiffs' exercise of religion imposed by defendants in this case necessarily affects interstate commerce.  Plaintiffs' claims are based on a denial of a Certificate of Appropriateness to construct a nearly 20,000 square-foot addition to their property.  <u>See</u> Third Am. Compl. ¶¶ 33-37, 64-65; Defs.' Mem., Ex. A (Doc. No. 101-2).

---

[6] The Second Circuit's decision was in the context of an "as applied" challenge.  <u>See Westchester Day Sch.</u>, 504 at 353.  However, in light of the fact that the Second Circuit identified a circumstance in which section 2(a) of RLUIPA was constitutional as applied, the statute is necessarily constitutional on its face.  <u>See Diaz v. Paterson</u>, 547 F.3d 88, 101 (2d Cir. 2008) (holding that, in order to succeed on a facial challenge, plaintiff must "'establish that no set of circumstances exists under which the [statute] would be valid.'" (quoting <u>Cranley v. Nat'l Life Ins. Co. of Vt.</u>, 318 F.3d 105, 110 (2d Cir. 2003) (alteration in original)).

The Second Circuit has "expressly noted that commercial building construction is activity affecting interstate commerce." Westchester Day Sch., 504 F.3d at 354. Therefore, the court does not need to determine whether plaintiffs also qualify under one of the other applications of RLUIPA's substantial burdens provision, see 42 U.S.C. § 2000cc(a)(2)(A), (C) (extending RLUIPA's "substantial burdens" provision to programs receiving federal financial assistance and to instances where the government makes "individualized assessment of the proposed uses for the property involved"), and the court declines to address defendants' arguments with respect to the Fourteenth Amendment, see Westchester Day Sch., 504 F.3d at 354 ("In light of our determination that RLUIPA's application in the present case is constitutional under the Commerce Clause, there is no need to consider or decide whether its application could be grounded alternatively in § 5 of the Fourteenth Amendment.").

> b.      The Separation of Powers

Defendants' argument with respect to the appropriate separation of powers is a nonstarter in this case. This argument is based entirely on the Supreme Court's decisions in Employment Division, Department of Human Resources v. Smith, 494 U.S. 872 (1990), and City of Boerne v. Flores, 521 U.S. 507 (1997), defining the scope of the First Amendment Free Exercise Clause and Section 5 of the Fourteenth Amendment. See Defs.' Mem. 33-36.   The Supreme Court in City of Boerne determined that Congress exceeded its power under the Fourteenth Amendment when it passed the Religious Freedom Restoration Act ("RFRA"), in light of the Supreme Court's free

exercise jurisprudence set forth in <u>Smith</u>.  <u>See</u> <u>City of Boerne</u>, 521 U.S. 533-36.

Congress passed RLUIPA in response to <u>Boerne</u>, attempting to address RFRA's

defects.  <u>See</u> <u>Sossamon v. Texas</u>, 131 S. Ct. 1651, 1655-56 (2011).

The court has previously determined that plaintiffs' instant action falls within the

scope of Congress's Commerce Clause authority, pursuant to section 2(a)(2)(B) of

RLUIPA.  <u>See</u> discussion, <u>supra</u>, at 8-10.  In light of this holding, the instant case does

not implicate the separation of powers concerns raised by defendants, as Congress's

Commerce Clause powers were not discussed in <u>Smith</u> or <u>City of Boerne</u>.  Therefore,

the court does not need to address this constitutional question.  <u>See</u> <u>Allstate Ins. Co. v.</u>

<u>Serio</u>, 261 F.3d 143, 149-50 (2d Cir. 2001) ("It is axiomatic that the federal courts

should, where possible, avoid reaching constitutional questions.").

c.    The Establishment Clause

The equal terms provisions provides that, "No government shall impose or

implement a land use regulation in a manner that treats a religious assembly or

institution on less than equal terms with a nonreligious assembly or institution."  42

U.S.C. § 2000cc(b)(1).  Defendants, taking their cue from Justice Stevens' concurrence

in <u>City of Boerne</u>, argue that this provision violates the Establishment Clause of the First

Amendment.  <u>See</u> Defs.' Mem. 36 ("RLUIPA 'provide[s] the Church with a legal weapon

that no atheist or agnostic can obtain.'") (quoting <u>City of Boerne</u>, 521 U.S. at 537

(Stevens, J., concurring) (alteration in original)).  As with defendants' previous

arguments, this argument is easily disposed of.[7]

Courts conduct a three-prong analysis in order to resolve an Establishment Clause challenge, as articulated by the Supreme Court in <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971). "Under <u>Lemon</u>, government action that interacts with religion must (1) have a secular purpose, (2) have a principal effect that neither advances nor inhibits religion, and (3) not bring about excessive government entanglement with religion." <u>Westchester Day School</u>, 504 F.3d at 355 (citing <u>Lemon</u>, 403 U.S. at 612-13)). The equal terms provision of RLUIPA satisfies this test.

First, the provision has a permissible secular purpose. The equal terms provision targets unequal treatment between religious and secular organizations. The Supreme Court has made it clear that this first requirement "does not mean that the law's purpose must be unrelated to religion." <u>Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos</u>, 483 U.S. 327, 335 (1987). Rather, it is permissible for Congress to seek "to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." <u>Id.</u> Preventing discriminatory regulatory treatment of religious entities acts to alleviate just such interference. <u>See</u> <u>Midrash Sephardi, Inc. v. Town of Surfside</u>, 366 F.3d 1214, 1240-41 (11th Cir. 2004).

Second, RLUIPA does not act to advance religion. Again, the Supreme Court

_____

[7] The court notes that defendants do not mention the <u>Lemon</u> test even once in their discussion of the Establishment Clause, nor do they discuss the cases which have held RLUIPA's equal terms provision to be constitutional. <u>See</u> Defs.' Mem. 36-37.

has clarified that "[a] law is not unconstitutional simply because it <u>allows</u> churches to advance religion." <u>Amos</u>, 483 U.S. at 337. The Supreme Court specifically rejected the argument, advanced by defendants here, that, by singling out religious entities for a benefit (in this case, the benefit of being free from discriminatory treatment), RLUIPA is <u>per se</u> invalid. Rather, "[w]here, as here, government acts with the proper purpose of lifting a regulation that burdens the exercise of religion, [there is] no reason to require that the exemption comes packaged with benefits to secular entities." <u>Id.</u> at 338.

Finally, RLUIPA does not result in excessive entanglement between church and state. The statute "avoids . . . intrusive inquiry into religious belief." <u>Id.</u> at 339. "Equal treatment maintains the separation of church and state by keeping the government separate from people's decisions about religion, while ensuring that the government does not 'make[] adherence to religion relevant to a person's standing in the political community.'" <u>Midrash Sephardi</u>, 366 F.3d at 1242 (quoting <u>Wallace v. Jaffree</u>, 472 U.S. 38, 69 (1985) (O'Connor, J., concurring in judgment)) (alteration in original). Thus, excessive entanglement has not occurred.

For these reasons, the court joins those other courts which have found the equal terms provision of RLUIPA constitutional and not in violation of the Establishment Clause. <u>See</u> <u>Midrash Sephardi</u>, 366 F.3d at 1240-42; <u>Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs</u>, 612 F. Supp. 2d 1163, 1178-82 (D. Colo. 2009). Therefore, it denies defendants' Motion to Dismiss counts Six and Eight on the basis of the unconstitutionality of RLUIPA.

2.  Defendants' Remaining Arguments

Defendants also ask the court to render judgment on the pleadings.  They make five separate arguments that Chabad has failed to sufficiently plead plausible causes of actions.  See Defs.' Mem. 38-50.  For the following reasons, the court disagrees and denies this portion of defendants' Motion.

a.  Substantial Burden

The Free Exercise Clause, RLUIPA, Article I of the Connecticut Constitution, and the CRFA each require a plaintiff to demonstrate that it experienced a "substantial burden" on their exercise of religion.  See Westchester Day Sch., 504 F.3d at 348 (Free Exercise and RLUIPA); Cambodian Buddhist Soc., 285 Conn. at 422-26 (Connecticut Constitution and CRFA).  Defendants argue that Chabad has failed to plead that such a burden would result from the HDC's denial of plaintiffs' Certificate of Appropriateness. See Defs.' Mem. 39-41.  It is the court's view, however, that a substantial burden has been sufficiently alleged in this case.

In the land use context, a "substantial burden" is "government action that directly coerces the religious institution to change its behavior."  Westchester Day Sch., 504 F.3d at 349 (emphasis removed).  The Second Circuit has noted that rejection of a plan which includes an opportunity for resubmission is less likely to substantially burden an organization's religious exercise.  Id.  However, "a conditional denial may represent a substantial burden if the condition itself is a burden on free exercise, the required modifications are economically unfeasible, or where [the government's] stated

willingness to consider a modified plan is disingenuous." Id.

Chabad, in its Amended Complaint, has included a number of allegations with respect to the insufficient size of their current space and the need to expand to accommodate the practice of their religion. See Third Am. Compl. ¶¶ 23-30. Chabad purchased a sizable piece of property, sufficient to construct such a space. Id. at ¶¶ 31-32. In the Certificate of Appropriateness, Chabad proposed an addition to the current property that it alleges would be necessary to accommodate its needs. Id. at ¶ 34.

Although the HDC's rejection of the proposal included an opportunity to resubmit, see Defs.' Ex. A at 7, Chabad's allegations support a plausible claim that such an attempt would be futile. The HDC clearly indicated that they would not permit an addition any larger than the size of the current building. Id. While Chabad does not explicitly allege that its religious practices could not be performed in a space of this size, (two times the original size), such a claim can be inferred from the pleadings and incorporated documents.

Chabad's proposed addition included space for a sanctuary, classrooms, administrative offices, and a residence. Id. at 3; Third Am. Compl. ¶ 34. In light of the substantial difference between the proposed space and the limitations insisted on by the HDC—a difference of approximately 17,000 square feet—the court concludes that Chabad has alleged a plausible claim that a substantial burden resulted from the HDC's denial. Presumably, if Chabad conformed its plans to the HDC's specification, it would need to sacrifice a good portion of the spaces that it believes is necessary to the

exercise of its religion.

The court rejects defendants' conclusory claim that the HDC's decision qualifies as a "neutral application of [a] legitimate land use restriction[]." Westchester Day Sch., 504 F.3d at 350. Although facially the HDC relied on neutral principles when it denied plaintiffs' Certificate, Chabad has plausibly alleged that this decision was arbitrary, capricious, and unlawful, and "reflect[ed] bias or discrimination against [plaintiffs'] religion." Id.; see Third Am. Compl. ¶¶ 46-56 (alleging inconsistent application of the HDC's Standards and Guidelines); see also id. at ¶ 57 (alleging statements made by Commission members suggesting animus).

For all these reasons, the court concludes that Chabad has alleged a plausible claim that a substantial burden was imposed on the exercise of its religion.

b.    Different Treatment

Defendants next argue that Chabad has failed to allege that it was treated differently than similarly situated organizations or individuals. Defs.' Mem. 41-46. Such an allegation is required to sustain its claims pursuant the Free Exercise Clause, the Equal Protection Clause, and RLUIPA.[8] See Third Church of Christ, Scientist, of New York City v. City of New York, 626 F.3d 667 (2d Cir. 2010) (RLUIPA); United States v. Brown, 352 F.3d 654, 668-69 & n.18 (2d Cir. 2003) (discussing Free Exercise and Equal Protection Clauses). Defendants' instant arguments are more appropriately

_____

[8] In light of the court's instant Ruling, the court does not need to analyze the contours of plaintiffs' various claims. It is sufficient for the court to find that plaintiffs have stated a plausible claim of differential treatment, in spite of defendants' arguments to the contrary.

raised in a motion for summary judgment and, accordingly, the court denies defendants'
Motion on this ground.

The court begins by noting that the major area of contention between the Chabad
and the HDC is the scale of Chabad's plans. Plaintiffs' proposed addition would be
more than five times the size of the original building. See Defs.' Mem., Ex. A at 3. The
HDC indicated that it would not approve a Certificate of Appropriateness for an addition
which was larger in size than the original building. Id. at 6-7. In its Third Amended
Complaint, Chabad alleges that a number of buildings within the Historic District were
permitted to construct additions which were larger in size than the original, historic
building. Third Am. Compl. ¶¶ 46-56. According to Chabad, these differences give rise
to a colorable claim of disparate treatment.

Defendants, however, identify potential problems with each of these supposed
comparators. To begin with, of all the other buildings with additions mentioned in the
Third Amended Complaint, only three appear to include additions that are actually larger
than the historic building to which they were attached. See Defs.' Mem. 43-45
(discussing additions to Town Hall, the Rose Haven Home, and the Oliver Wolcott
Library). Defendants further argue that even these three buildings are insufficient to
sustain a plausible claim of a difference in treatment. Id. However, with respect to at
least two of these buildings—the Rose Haven home and Town Hall—defendants'
arguments are insufficient to render Chabad's claims implausible.

With respect to the Rose Haven home, defendants state, "There is no evidence

in the public record that the additions made to Rose Haven . . . were governed or approved by the HDC." Defs.' Mem. 44. This argument, however, is completely backward. When analyzing whether plaintiffs have failed to state a claim, a court must accept all allegations as true and draw every reasonable inference in favor of plaintiffs. See Phelps, 308 F.3d at 184. Defendants' failure to produce evidence from the public record cannot operate to render plaintiffs' claims implausible. Rather, the court will assume that plaintiffs will be able to establish their claims as alleged—that defendants inconsistently approved the Rose Haven addition, while denying plaintiffs' Certificate of Approval—and will await consideration of defendants' Motion for Summary Judgment to consider whether and what issues of fact actually exist.

Defendants' argument that Town Hall's addition was not approved by the HDC or the Board of Warden and Burgesses fails for much the same reason. In order to support this assertion, defendants rely on an affidavit by the current Warden of the Borough. Affidavits of this nature clearly qualify as extrinsic material on which this court cannot rely when deciding defendants' Motion. See Global Networks Commc'ns, Inc. v. City of New York, 458 F.3d 150, 154-57 (2d Cir. 2006). The court, therefore, rejects defendant's argument as unsupported. [9]

---

[9] The court also rejects defendants' contention that it should treat plaintiffs' failure to specifically dispute the content of this Affidavit as some sort of admission. Defs.' Reply at 6 (Doc. No. 131). Plaintiffs clearly object to the court's consideration of such extrinsic evidence. See Pls.' Opp. 3 (Doc. No. 127). The court hardly views this as a tacit admission to the content of the various documents cited.

          c.       Free Speech, Freedom of Association, and Due Process

Finally, the court rejects defendants' arguments with respect to Chabad's free speech, freedom of association, and due process claims. <u>See</u> Defs.' Mem. 47-50. Defendants, in their short discussion, fail to adequately discuss plaintiffs' actual claims. The court, therefore, denies defendants' Motion in this regard.

Defendants argue that plaintiffs fail to assert a free speech claim, because the HDC's decision "only regulates the size of the building within which the speech might occur, not whether it will." Defs.' Mem. 47. Similarly, with respect to plaintiffs' freedom of association claim, defendants argue that the HDC's decision "did not deny [the Chabad] the capacity to associate or to foster an association." <u>Id.</u> at 48. However, it is the court's view that Chabad has sufficiently alleged that, by denying the Chabad's Certificate of Appropriateness, the HDC acted with the <u>intent </u>to interfere with the Chabad's religious speech and expressive association. <u>See</u> Third Am. Compl. ¶ 57 ("The Defendants have engaged in a targeted and deliberate effort to prevent the Plaintiffs from developing the Property and use [sic] it as a place of worship . . . . This targeting has been based in large part on anti-Hasidic animus."). Chabad has, therefore, alleged plausible First Amendment free speech and freedom of association claims. <u>See</u> <u>Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston</u>, 250 F. Supp. 2d 961, 981 (N.D. Ill. 2003) (finding plausible free speech and freedom of association claims can exist where "the dispositive factor triggering the [regulation] in

question was ultimately the content of the congregation's speech in its property"); cf. Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 657 (10th Cir. 2006) (upholding dismissal of free speech and freedom of association claims where "no evidence was presented indicating that the ordinance was passed for the purpose of curtailing or controlling the content of expression," and, conversely, suggesting that such evidence would support plaintiffs' claims and the application of strict scrutiny).

Defendants' arguments with respect to the Chabad's due process claims are completely misplaced. Chabad alleges that the HDC's "unfettered discretion" and "vague conditions" operate to deny plaintiffs' right to due process. Third Am. Compl. ¶ 84; see VIP of Berlin, LLC v. Town of Berlin, 593 F.3d 179, 186 (2d Cir. 2010) (discussing "void-for-vagueness" cause of action under the Due Process Clause). Defendants do not argue that Chabad has failed to plead a "void-for-vagueness" claim. Instead, defendants discuss an unrelated line of cases and argue that plaintiffs have received adequate notice and an opportunity to be heard. See Defs.' Mem. 49-50 (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

The court, therefore, denies defendants' Motion for Judgment on the Pleadings with respect to Counts Two, Three, and Five, on the ground that defendants failed to address their arguments to the claims which Chabad actually brought.

## III.    CONCLUSION

For the foregoing reasons, the court grants defendants' Motion to Dismiss (Doc. No. 88) with respect to Rabbi Eisenbach. The court similarly grants the Borough

defendant's later Motion to Dismiss (Doc. No. 141), which joined the individual defendants seeking dismissal with respect to Rabbi Eisenbach.  The Clerk is directed to terminate Rabbi Eisenbach as a party in this case.

The court denies defendants' Motion to Dismiss (Doc. No. 101) with respect to Counts One through Eight, Eleven, and Twelve, and rejects their challenge to the constitutionality of RLUIPA.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 20th day of June, 2011.


_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge