**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHABAD LUBAVITCH OF | : | CIVIL ACTION NO. |
| LITCHFIELD COUNTY, INC., et al., | : | 3:09-CV-1419 (JCH) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF LITCHFIELD, | : | MAY 23, 2018 |
| CONNECTICUT, et al., | : | |
| Defendants. | : | |

**RULING RE: MOTION FOR ATTORNEY FEES AND COSTS (DOC. NO. 329)**

## I.   INTRODUCTION

This action arose out of a denial of an application for a Certificate of

Appropriateness made by Chabad Lubavitch of Litchfield County ("the Chabad") to the

Historic District Commission of the Borough of Litchfield (the "Commission").  The

Chabad alleged that the Commission's denial substantially burdened its religious

exercise, in violation of the Religious Land Use and Institutionalized Persons Act

("RLUIPA"), title 42 section 2000cc et seq. of the United States Code.  The defendants,

the Commission and the Borough of Litchfield, denied this allegation.

In its initial Complaint, the Chabad asserted Free Exercise, Free Speech, and

Freedom of Association claims under the First and Fourteenth Amendments; Due

Process and Equal Protections claims under the Fourteenth Amendment; and

Substantial Burden, Nondiscrimination, and Equal Terms claims under RLUIPA.  The

Chabad also alleged Civil Conspiracy under title 42 section 1985(3) of the United States

Code; Failure to Prevent Violations and Civil Conspiracy under title 42 section 1986 of

the United States Code; claims under the Connecticut State Constitution; and a Free

Exercise claim under the Connecticut Religious Freedom Act, Connecticut General Statutes section 52-571b.

The original suit was brought by the Chabad and Rabbi Joseph Eisenbach, founder and current leader of the Chabad Lubavitch of Litchfield County, against the Commission, the Town of Litchfield, several members of the Commission in their individual and official capacities, and several Doe defendants. By the Third Amended Complaint, however, the plaintiffs had dropped their claims against the Town of Litchfield and the Doe defendants.

This court granted summary judgment in favor of the defendants on all claims. See Chabad Lubavitch v. Borough of Litchfield, 796 F. Supp. 2d 333 (D. Conn. 2011). The Chabad appealed that judgment, and the Second Circuit remanded the case, vacating the judgment with respect to two of the claims: the Substantial Burden claim and the Nondiscrimination claim. See Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Com'n, 768 F.3d 183 (2d Cir. 2014).

The Second Circuit dismissed all claims against one of the Commission members, Wendy Kuhne. See id. at 187 n.1. The plaintiffs subsequently voluntarily withdrew all claims against the other two Commission members, Glenn Hillman and Kathleen Crawford. On the eve of trial, Rabbi Eisenbach voluntarily withdrew from the case as a plaintiff, following the court's Ruling on a Motion in Limine that evidence of damages was inadmissible. Because that Ruling eliminated all legal claims, the remaining plaintiff, the Chabad, had no right to a trial by jury. Therefore, by the time trial commenced, the case had evolved from a two-plaintiff, twelve-defendant, twelve-count

action to an action by a single plaintiff against two defendants on one claim for injunctive relief: Substantial Burden under RLUIPA.

The case was tried to the court over a three day period. At trial, the Chabad argued that all the uses of the proposed construction were religious exercise, at least in part, and that its proposal represented the minimum size necessary to accommodate its religious exercise. Furthermore, the Chabad argued that the Commission was disingenuous in articulating conditions under which a revised proposal would be accepted, and that the denial should therefore be interpreted as an absolute denial of any construction or modification of property at 85 West Street.

In a Bench Ruling issued on November 2, 2017, the court found that the Chabad's religious exercise was substantially burdened by the Commission's denial of its application for a certificate of appropriateness, specifically because the first floor footprint that the denial would have permitted was not large enough to accommodate the Chabad's religious needs. See Bench Ruling (Doc. No. 325) at 46–47. The court granted the Chabad's prayer for relief in part. Id. at 70–71. Specifically, the court issued a mandatory injunction as follows:

> [T]he court issues a mandatory injunction ORDERING the Historic District Commission of the Borough of Litchfield (the "Commission") to approve forthwith an application of the Chabad Lubavitch of Litchfield County (the "Chabad") for a certificate of appropriateness based on the court's conclusion that the denial substantially burdened the Chabad's religious exercise without a compelling governmental interest exercised in the least restrictive means, in violation of the Religious Land Use and Institutionalized Persons Act, title 42, section 2000cc et seq, of the United States Code, within the following parameters:
>
> First, the conditions in the Commission's Decision that do not relate to the size of the addition are still in effect, because

those conditions were not challenged by the Chabad.  <u>See</u> <u>supra</u> p. 22 & note 7.

> Second, given the needs of the Chabad with respect to the proposed religious uses of the first and basement floors of the proposed structure, the Chabad is entitled to a first floor and basement level as proposed in the Boe plans.
>
> Third, because the Chabad's religious exercise will not be substantially burdened if the rabbi's residence is not inside the Chabad House, the application should be modified to remove what is currently the second story of the Boe plans.
>
> The Chabad is hereby ordered to submit an amended application consistent with these conditions, or a modified application if agreed to by the parties without the approval of the court, within thirty days of the date of this Ruling.  Upon receipt of said application, the Commission is ordered to approve said application within thirty days.

<u>Id.</u>  In a footnote to the mandatory injunction section, the court stated:

> The court notes that, because the sub-basement is located entirely below-grade and is therefore beyond the purview of the Commission, the court knows of no reason why the Commission would have the authority, much less the reason, to deny the Chabad the ability to construct the sub-basement level as proposed.  In addition, given that removal of the rabbi's residence level from the application will significantly decrease the mass and roofline of the addition, the court is of the view that the staff residential level, either as proposed or with modifications to incorporate / connect it to the second story of the original Deming House, will not conflict with the Commission's stated goals of protecting the residential character of the area and not overwhelming the original structure.

<u>Id.</u> at 71 n.21.  In sum, the court agreed with the Chabad's position that its religious exercise was substantially burdened, but disagreed with the Chabad's position as to the extent of the burden.

On November 16, 2017, the Chabad moved for the award of attorney fees and costs.  <u>See generally</u> Plaintiff's Motion for Attorney Fees and Costs ("Pl.'s Mot.") (Doc.

No. 329).  The defendants oppose the Chabad's Motion.  <u>See</u> Objection re Motion for Attorney Fees ("Def.'s Response") (Doc. No. 338).  Subsequently, on May 16, 2018, the defendants moved for permission to file supplemental exhibits.  Specifically, the defendants assert that the Chabad submitted a significantly revised application to the HDC which was approved by the HDC in May 2018.  Motion for Permission to File Supplemental Information ("Def.'s Mot. to Supplement") (Doc. No. 343).  The Chabad asserts that the revised application and approval "does not in any manner moot attorneys fees" and should not be considered by this court.  Plaintiff's Response to Defendant's Request for Supplemental Briefing ("Pl.'s Obj. to Supplement") (Doc. No. 344).

For the reasons set forth below, the Chabad's Motion for Attorney Fees and Costs is granted in the amount of $717,405.95.

II.  **DISCUSSION**

In their Motion for Attorney Fees and Costs, the Chabad requests a total monetary award for attorney fees and costs in the amount of $1,640,110.36, broken down as follows:

| | |
|---|---|
| Attorney fees for Herbst & Herbst and Robinson & Cole (underlying administrative proceeding) | $214,095.00 |
| Attorney fees for the American Liberties Institute | $685,384.00 |
| Attorney fees for Halloran & Sage (local counsel) | $410,935.50 |
| Attorney fees for Dalton & Tomich, LLC | $223,419.50 |
| Costs | $106,276.36 |

The Chabad makes its Motion pursuant to section 1988 of title 42 of the United States Code, which provides, in pertinent part, as follows:

> In any action or proceeding to enforce a provision of . . . the Religious Land Use and Institutionalized Persons Act of 2000 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

42 U.S.C. § 1988(b).

In this case, the defendants assert that the Chabad is not entitled to attorney fees at all because the Chabad is not a "prevailing party" within the meaning of section 1988. <u>See</u> Def.'s Response at 12–17. The defendants further argue that the Chabad is not entitled to reimbursement for expenses such as "airfare, car rentals, fuel, tolls, and meals." <u>Id.</u> at 17–18. In addition, the defendants raise specific challenges to the Chabad's particular fee claims, including: (1) that the Chabad is not entitled to fees for the proceeding before the Commission that underlies this action, <u>id.</u> at 18–21; (2) that much of the work performed by local counsel and out-of-state counsel was duplicative, <u>id.</u> at 21–23; (3) that the Chabad wasted money by hiring out an out-of-state expert in RLUIPA litigation, Attorney Daniel Dalton, <u>id.</u> at 24–25; and, finally, (4) that the court should cap the number of compensable hours devoted to the fee application to five percent of the number of hours devoted to the main case, <u>id.</u> at 26–27.

A.     Whether the Chabad "Prevailed"

As the statutory language makes clear, a threshold determination for the court is whether the Chabad is a "prevailing party." 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the <u>prevailing party</u> . . . a reasonable attorney's fee . . . .") (emphasis added); <u>see</u> <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 757 (2d Cir. 1998) ("The question of whether a plaintiff is a 'prevailing party' within the meaning of the fee-

shifting statutes is a threshold question that is separate from the question of the degree to which the plaintiff prevailed.").  The Supreme Court has held that a plaintiff "prevails" within the meaning of section 1988 "when actual relief on the merits of [its] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  Farrar v. Hobby, 506 U.S. 103, 111–12 (1992).  Thus, in Rhodes v. Stewart, 488 U.S. 1 (1988), the Supreme Court denied the plaintiff's motion for attorney fees awarded based on a declaratory judgment that prison officials had violated the plaintiffs' First and Fourteenth Amendment rights. "By the time the District Court entered judgment, 'one of the plaintiffs had died and the other was no longer in custody.'"  Farrar, 506 U.S. at 110 (quoting Rhodes, 488 U.S. at 2).  "Under these circumstances," the Supreme Court held "neither plaintiff was a prevailing party" because "[w]hatever 'modification of prison policies' the declaratory judgment might have effected 'could not in any way have benefited either plaintiff, one of whom was dead and the other released.'"  Id. (quoting Rhodes, 488 U.S. at 4).

The defendants argue that the Chabad did not "prevail" within the meaning established by the Supreme Court in Farrar.  The defendants assert that, after the court issued the Judgment in this case, the Chabad did not file an amended application for a certificate of appropriateness as the court's Ruling required.  See Def.'s Response at 6 ("[The Chabad] never filed a revised set of the Boe plans, and it never asked for an agreement with the Defendants, much less reach one.").  Based on the Chabad's failure to file a revised application as directed by the court, the defendants assert that the Chabad's "own actions have rendered the injunction against the Defendants moot."  Id.

at 13.  Therefore, the defendants argue that their "behavior has not, in the least, been modified."  Id. at 15.

Although this argument is interesting, the court agrees with the Chabad that it is a prevailing party.  The court declines to adopt the reasoning of the defendants for three reasons.

First, in Farrar, the Supreme Court held that, for a party to prevail, "[w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement."  Farrar, 506 U.S. at 111 (emphasis added).  Thus, the Supreme Court has defined the operative question is not whether the legal relationship between the parties is altered at the time of a ruling on a motion for attorney fees, but rather whether that relationship was altered at the time the judgment issued.  Thus, in Rhodes, for example, the operative moment was the moment when the judgment issued, at which time the plaintiffs were either dead or released from prison.  See Rhodes, 488 U.S. 1.

This legal standard is sensible.  To look, instead, at the status of the legal relationship between the parties at the time a ruling on a motion for attorney fees issued might permit any number of otherwise irrelevant variables to determine the outcome of the attorney fees motion.  For example, a party who lives to see a judgment enter enjoining behavior by the defendants against him but then passes away before a motion for attorney fees issues would not be eligible for attorney fees, regardless of the impact of the judgment on the behavior of the defendants before his death.  In a case like Rhodes, on the other hand, the plaintiff could have been transformed into a prevailing party by returning to correctional custody.  The facts of this case further illustrate the degree to which the standard urged by the defendants would create arbitrary results: if

this court had given the Chabad a year instead of thirty days to submit a revised application, the defendants could not raise this argument.  In addition to introducing irrelevant variables into the determination of attorney fees, looking to the date of a ruling on attorney fees would further create troubling incentives for an opponent of an attorney fees motion to delay a decision, and make attorney fee awards subject to the schedule and celerity of the judge deciding the motion.

Second, the injunction issued in its Bench Ruling and Judgment was unequivocally directed at the defendants such that it "modif[ied] the defendant's behavior in a way that directly benefits the plaintiff."  Farrar, 506 U.S. at 109.  Although the defendants argue that their behavior was not modified because the Chabad did not submit an amended application, that argument overlooks the fact that the Judgment created a legal obligation on the part of the defendants to the Chabad, whether or not the defendants were called to act on that obligation.  Therefore, the injunction altered the legal relationship between the parties.

Third, although the Chabad did not comply with the court's order to submit a revised application within a specific time period, the court concludes that its Bench Ruling nevertheless bars the defendants from denying an application consistent with the court's Bench Ruling if the Chabad submits such an application in the future.[1]  The court concluded that the denial issued by the defendants in 2007 substantially burdened the religious exercise of the Chabad, and based its injunctive relief on that conclusion.  See Bench Ruling at 70–71.  The court's conclusions with respect to the application of

---

[1] The court notes that the 30-day deadline in the Bench Ruling and Judgment in this case was imposed in an effort to move the action along, given that the matter was filed in September 2009.

RLUIPA to the parties in this case are still in effect—and would have either res judicata or collateral estoppel effect—irrespective of the deadlines articulated in the Bench Ruling.

For these three reasons, the court concludes that the Chabad is a "prevailing party" for the purposes of section 1988, despite the Chabad's failure to submit a revised application within the timeline stated in the Bench Ruling.

In their Motion for Permission to File Supplemental Information, the defendants assert that, since the Motion for Attorney Fees was filed, the Chabad and the HDC have agreed on an alternative plan.  See Def.'s Mot. to Supplement at 3.  On that basis, the defendants argue that "[t]he court's decision in this case did not affect the behavior of the Defendants toward the Plaintiff, but rather affected the behavior of the Plaintiffs toward the Defendants."  Id. at 4.  The Chabad argues, on the other hand, that "the issuance of a mandatory injunction against Defendants is a 'judicially sanctioned change in the legal relationship of the parties,'" and renders the Chabad a prevailing party without regard for what happens between the parties after the injunction issues. Pl.'s Obj. to Supplement at 3.

The court agrees with counsel for the Chabad that, for the same reason the court has declined to consider whether the Chabad submitted an application within the thirty days allowed in the Bench Ruling, it is similarly of no relevance to the Motion for Attorney Fees whether the Chabad entered into an alternative agreement with the HDC. The question, as the court has concluded, is the effect of the Judgment at the time the Judgment issues.  See Farrar, 506 U.S. at 111.  Therefore, the court declines to consider the events that the defendants assert took place in May 2018.  The

Defendant's Motion for Permission to File Supplemental Information (Doc. No. 343) is denied.

B.     Partial Success

The court's conclusion that the Chabad is a "prevailing party" within the meaning of section 1988 does not necessarily mean that the Chabad is entitled to attorney fees. See LeBlanc-Sternberg, 143 F.3d at 758 ("A plaintiff who has 'prevail[ed]' in the litigation has established only his eligibility for, not his entitlement to, an award of fees."). In Farrar, for example, the Supreme Court concluded that the plaintiff was a "prevailing party" within the meaning of section 1988, but nevertheless affirmed the circuit court's judgment that attorney fees were not appropriate where the plaintiff sought $17 million in compensatory damages and was awarded only nominal damages. Farrar, 506 U.S. at 115–16 ("In some circumstances, even a party who formally 'prevails' under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a party."). In reaching this conclusion, the Supreme Court noted that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Id. at 114 (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).

The defendants urge the court to conclude that the Chabad, like the plaintiff in Farrar, did not achieve a significant degree of success. See Def.'s Response at 16–17. In support of this position, the defendants note that the Chabad failed to comply with the timeline established in the court's Bench Ruling, noting that, because "the [Chabad] has simply ignored the court" it has "made it quite clear that it finds no benefit from the court's order." Id. at 17.

The court disagrees with the defendants' apparent view that the measure of a party's success is necessarily reflected in its actions post-judgment. In this case, for example, the Chabad's actions, or lack thereof, could reflect that the Chabad now lacks funding to build the addition that the court approved, or even to obtain revised architectural plans for the purposes of a revised application. Particularly in light of how long this action pended, extrapolating from a party's failure to take advantage of a legal right accorded to them in a judgment could be the product of any number of factors that may be entirely irrelevant to the "significance of the overall relief obtained." Hensley, 461 U.S. at 435. Furthermore, in the context of an motion for attorney fees, the Supreme Court has held the mental state of the parties irrelevant:

> [F]ocusing on the subjective importance of an issue to the litigants . . . asks a question which is almost impossible to answer. Is the 'primary relief sought' in a disparate treatment action under Title VII reinstatement, backpay, or injunctive relief? This question, the answer to which appears to depend largely on the mental state of the parties, is wholly irrelevant to the purposes behind the fee shifting provisions.

Texas State Teachers Ass'n v. Garland Independent Sch. Dist., 489 U.S. 782, 791 (1989). The court concludes that the defendants' reliance on the Chabad's actions after the Judgment issued in this case raises the same issues that the "primary relief sought" inquiry raises and is, therefore, precluded by Texas State Teachers Ass'n.

That said, the Chabad clearly achieved only partial success in this case. Therefore, the court must consider the partial nature of the Chabad's success in crafting an award. See Hensley, 461 U.S. at 437 ("When an adjustment is requested on the basis of either the exception or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.").

In <u>Hensley</u>, the Supreme Court engaged in a lengthy discussion of cases in which less than complete success was accorded, and the appropriate relationship between the relief granted and awards for attorney fees.  As a general matter, the Court noted that, in cases with "a common core of facts" or "related legal theories," a district court need not "divide the hours expended on a claim-by-claim basis."  <u>Id.</u> at 435.  The Court went on to describe the relevance of the degree of success obtained in an action as follows:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.  In these circumstances the fee should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.  Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.  Again, the most critical factor is the degree of success obtained.

<u>Id.</u> at 435–36 (internal citation omitted).  The Court further clarified that the inquiry does not end upon a finding that the relief accorded was "significant."  <u>Id.</u> at 439–40.  Rather, the district court must place the relief in the context of "the litigation as a whole" to determine whether the hours expended were reasonable relative to the success achieved.  <u>Id.</u> at 440 ("A reduced fee award is appropriate if the relief, however

significant, is limited in comparison to the scope of the litigation as a whole.").  The Hensley Court also noted that a court should not apply a "mathematical approach" of simply counting up the number of claims and comparing that to the number of claims on which the plaintiff prevailed.  Id. at 435 n.11.  Finally, the Court held that it was not "necessarily significant" whether the prevailing party received all the relief requested. Id.  "For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."  Id.

In this case, there can be no serious dispute that the claims were intertwined factually.  All the claims arose out of a single decision by the Commission to deny the Chabad's application for a certificate of appropriateness.  Furthermore, as the court's lengthy Bench Ruling in this case illustrates, the RLUIPA Substantial Burden inquiry is broad.  The Second Circuit opinion in this case directed the fact-finder to consider a number of factors in analyzing whether the denial substantially burdened the Chabad's religious exercise, including, but not limited to: (1) "whether the denial was conditional;" if so (2) "whether the conditions attendant to the Commission's denial of the Chabad's application themselves imposed a substantial burden on the Chabad's religious exercise[;] [(3)] whether feasible alternatives existed for the Chabad to exercise its faith[;] and [(4)] whether the Chabad reasonably believed it would be permitted to undertake its proposed modifications when it purchased the property at 85 West Street;" as well as (5) "whether the proposed modifications shared a 'close nexus' with and would be consistent with accommodating the Chabad's religious exercise;" and (6) "the

arbitrariness of [the] denial." <u>Chabad Lubavitch of Litchfield County, Inc.</u>, 768 F.3d at 195–96.

In applying the facts of a case to the standard articulated in <u>Hensley</u>, "[t]here is no precise rule or formula for making these determinations" and district courts have the discretion to either "attempt to identify specific hours that should be eliminated" or "simply reduce the award to account for the limited success." <u>Hensley</u>, 461 U.S. at 436–37. Given the intertwined nature of the claims in this case, the court will evaluate the success of the litigation as a whole as opposed to on a claim-by-claim basis. <u>See, e.g.</u>, <u>Crawford v. City of New London</u>, No. 3:11-CV-1371 (JBA), 2015 WL 1125491, at **7, 9 (D. Conn. Mar. 12, 2015) (declining to reduce award based on specific failed claims because claims were intertwined and applying across-the-board reduction to account for partial success).

As to the appropriate proportion, the court concludes that an across-the-board fifty percent reduction of the award is reasonable to account for the Chabad's partial success. On one hand, the Chabad achieved a legal victory and was awarded significant injunctive relief but, on the other hand, the Chabad was denied much of the disputed injunctive relief it requested and failed to support a claim for money damages. Therefore, the court will reduce the lodestar figure calculated below by half to reflect the Chabad's partial success.

C.   <u>Administrative Proceedings</u>

In its Motion for Attorney Fees, the Chabad requests fees for attorneys who represented the Chabad in proceedings before the Commission in 2007. <u>See</u> Pl.'s Mot. at 6–7. The defendants argue that section 1988 does not provide for fees for the administrative proceedings underlying this action. <u>See</u> Def.'s Response at 18–20.

15

The court agrees with the defendants that the Chabad is not entitled to attorney fees for representation before the Commission. "Section 1988 permits attorney's fees 'for time spent on administrative proceedings to enforce the [claim] prior to the litigation.'" Tsombanidis v. West Haven Fire Dept., 352 F.3d 565, 581 (2d Cir. 2003) (quoting North Carolina Dep't of Transp. v. Crest Street Cmty. Council, Inc., 479 U.S. 6, 15 (1986)). However, "[t]o obtain the fees, the administrative proceeding must be 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'" Id. (quoting Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 561 (1986)). The quintessential example of a situation in which administrative proceedings are "necessary to secure the final result obtained from the litigation" is a Title VII discrimination suit requiring exhaustion of administrative remedies before prior to litigation. See Webb v. Bd. of Educ. of Dyer Cty., 471 U.S. 234, 241 (1985) (noting that attorney fees for administrative proceedings were reasonable where "the statute that authorized fees, Title VII, also required a plaintiff to pursue available state administrative remedies"). In contrast, if the plaintiff "could go straight to court" to assert his rights, administrative proceedings "do not have the same integral function." Id.

In its Reply, the Chabad argues that the representation of the Chabad for the administrative proceedings "was essential to creating a record that could be successfully appealed from in the event of a denial, even though it was hoped and expected the commission would follow the rule of law and grant the approval." Pl.'s Reply at 4. The Chabad further argues that, "[i]n large measure, the evidence developed in the hearing at the local level became the evidence in the federal action" and "[i]t mattered not that the development of the evidence preceded the action." Id.

The court concludes that inclusion of fees for the proceeding before the Commission would violate the standard articulated above, namely that fees are appropriate for administrative proceedings that are "ordinarily necessary to secure the final result obtained." Tsombanidis, 352 F.3d at 581. Although it is true, in a sense, that the administrative proceeding below necessarily preceded this action, the proceedings were necessary only insofar as the result of the administrative proceeding constituted the action giving rise to this case. Thus, compared to a Title VII action, the Commission proceedings are more akin to an unlawful termination of an employee than to state administrative proceedings following that termination. A plaintiff is not entitled to attorney fees for proceedings that take place before a violation of its rights has occurred. Therefore, the court concludes that the Chabad is not entitled to attorney fees for the representation before the Commission.

     D.     <u>Reasonable Attorney Fees</u>

The Chabad requests attorney fees from three firms who represent the Chabad in this case: the American Liberties Institute, Halloran & Sage, and Dalton & Tomich, LLC.[2] The American Liberties Institute was lead counsel for the Chabad until approximately May 2017, at which time it became clear that the attorney who was planning to represent the Chabad at trial, Attorney Frederick Nelson, would not be available for trial for personal reasons. Thereafter, the Chabad retained Attorney Daniel Dalton of Dalton & Tomich, LLC, as lead counsel. Throughout this litigation, the Chabad has been represented by local counsel at Halloran & Sage.

---

[2] The Chabad also requests attorney fees for two law firms that represented the Chabad in the course of the administration proceedings before Commission. <u>See</u> Pl.'s Mot. at 6–8. For the reasons stated above, <u>see</u> <u>supra</u> Section II(C), the court has concluded that the Chabad is not entitled to attorney fees for that proceeding.

In order to determine reasonable attorney fees pursuant to section 1988, a court must calculate a "lodestar figure," which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on a case.  See, e.g., Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010) ("[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . . [T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective.").

1. Reasonable Hourly Rate

Determining the amount of attorney fees to which the Chabad is entitled requires the court to set a "reasonable hourly rate, taking account of all case-specific variables." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 189 (2d Cir. 2008).  Relevant considerations include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorney[ ]; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Id. at 186 n.3 (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)).  In determining what rate is reasonable, the court may take judicial notice of the prevailing rates in this District, based on both rates awarded in other cases and the court's own familiarity with prevailing rates.  See Farbotko v. Clinton Cty. of N.Y., 433

F.3d 204, 209 (2d Cir. 2005); M.K. ex rel. K. v. Sergi, 578 F. Supp. 2d 425, 427 (D.

Conn. 2008).

The Chabad requests hourly rates as follows:

| Firm | Timekeeper | Hourly Rate |
|---|---|---|
| American Liberties Institute | Frederick Nelson | $410 |
| | Nicole C. Myers | $350 |
| | Heather Dodge | $95 |
| | Satu E. Nelson | $70 |
| Halloran & Sage | Kenneth R. Slater | $350 and $375 |
| | Thomas C. Blatchley | $195 |
| | Ernesto A. Castillo | $150 |
| | Kelly McKeon | $150 |
| | Amanda Brosy | $175 |
| | Richard Roberts | $300 |
| | Enrico Costantini | $200 |
| | Daniel Krisch | $300 |
| Dalton & Tomich, LLC | Daniel P. Dalton | $410 |
| | Katharine Brink Harrison | $250 |
| | Zana Tomich | $310 |

In support of these rates, the Chabad submits several Declarations attesting to the

reasonableness of the hourly rates and time expended.  See Exh. 5, Pl.'s Mot. (Doc.

No. 329-5) (Declaration of Walter Weber in support of American Liberties Institute

hourly rates); Exh. 6, Pl.'s Mot. (Doc. No. 329-6) (Declaration of Kenneth Slater); Exh. 7,

Pl.'s Mot. (Doc. No. 329-7) (Declaration of Timothy Hollister in support of the hourly rates of Halloran & Sage); Exh. 8, Pl.'s Mot. (Doc. No. 329-8) (Declaration of Daniel P. Dalton); Exh. 9, Pl.'s Mot. (Doc. No. 329-9) (Declaration of Noel Sterett in support of the hourly rates of Dalton & Tomich, LLC). The defendants do not dispute the reasonableness of any of the hourly rates proposed by the Chabad.

The court has considered the supporting documentation submitted by the Chabad, as well as the court's knowledge of attorney fee rates in the District of Connecticut. The court finds that the requested rates, which range from $300–410 for partners, $150–250 for associates, and $70–95 for law clerks and paralegals, are reasonable in light of the experience of the individuals billing and the market rates in the District of Connecticut. See, e.g., U.S. Bank Tr., N.A. v. Walbert, No. 3:17-CV-991 (CSH), 2017 WL 4613192, at *4 (D. Conn. Oct. 16, 2017) (awarding hourly rates of $425 for partner, $250 for associate, and $80 for paralegal); Crawford, 2015 WL 1125491, at *3 (awarding hourly rates of $410 for partners and $250 for experienced associate).

### 2. Reasonably Expended Hours

The defendants challenge the reasonableness of the hours spent by counsel for the Chabad on several bases. First, the defendants argue that the Chabad should only receive attorney fees for time spent on the successful claim, Substantial Burden pursuant to RLUIPA, and that counsel for the Chabad largely failed to document which hours were devoted to which claims. See Def.'s Response at 22. However, the court has already concluded that the claims were sufficiently factually interrelated that it is neither practical nor necessary to calculate the number of hours devoted to the

Substantial Burden claim specifically. Instead, as stated above, the court will reduce the overall fee by fifty percent to reflect the partial success of counsel for the Chabad. <u>See</u> <u>supra</u> Section II(B).

The defendants also argue that counsel for the Chabad duplicated their efforts, first with respect to overlap between the work of lead counsel at the American Liberties Institute and local counsel at Halloran & Sage, and then with respect to overlap between previous lead counsel at the American Liberties Institute and new lead counsel at Dalton & Tomich, LLC. <u>See</u> Def.'s Response at 21, 24. "District courts have 'ample discretion' in 'assessing the extent of staffing and background research appropriate for a given case.'" <u>LV v. New York City Dept. of Educ.</u>, 700 F. Supp. 2d 510, 524 (S.D.N.Y. 2010) (quoting <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1146 (2d Cir. 1983)). Although the use of multiple attorneys may be reasonable, courts should not award fees for duplicative work. <u>Id.</u> District courts faced with "excessive, redundant, or otherwise unnecessary" hours have the "discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" <u>Kirsch v. Fleet Street, Ltd.</u>, 148 F.3d 149, 173 (2d Cir. 1998) (quoting <u>Carey</u>, 711 F.2d at 1146).

As to overlap between the American Law Institute and Halloran & Sage, upon review of the billing records in this case, the court concludes that the staffing patterns were generally reasonable. However, the court agrees that there was some duplication of work between the two firms, particularly between Attorney Frederick Nelson, partner at the American Law Institute, and Attorney Kenneth Slater, partner at Halloran & Sage. For example, both Attorney Nelson and Attorney Slater attended the depositions of

individual defendants and a number of other witnesses and potential witnesses, and devoted significant time to preparing for those depositions beforehand and reviewing deposition materials after the fact. Therefore, the court will reduce the hours billed by both Attorney Nelson and Attorney Slater by ten percent to account for the duplicative work performed by them.

With respect to the overlap between the American Law Institute and Dalton & Tomich, LLC, the defendants argue that Attorney Dalton "did a significant amount of work becoming familiar with [this] case which was entirely repetitive of work done by earlier counsel." Def.'s Response at 25. As aforementioned, Attorney Dalton was hired by the Chabad as lead counsel in May 2017, shortly before trial in July 2017, because Attorney Nelson had a scheduling conflict that made him unavailable for trial. There can be no question that replacing Attorney Nelson with Attorney Dalton at such an advanced stage of the case created inefficiencies, including requiring Attorney Dalton to spend time reviewing materials with which Attorney Nelson was familiar. See Def.'s Response at 25.

Given that the defendants did nothing to cause the replacement of counsel, it would be inequitable to leave them to pay the cost of transition. See, e.g., Malarkey v. Texaco, Inc., 794 F. Supp. 1237, 1247–48 (S.D.N.Y. 1992) (noting that the defendant was not responsible for duplicative work performed by replacement counsel and reducing the award for new counsel to account for duplication); Williams v. New York City Housing Auth., 975 F. Supp. 317, 326 (S.D.N.Y. 1997) (noting that staffing changes during 16 year litigation were reasonable, but reducing lodestar because "NYCHA alone should not bear the burden of duplicative work resulting from plaintiffs' counsel staff

changes"). That said, Attorney Dalton voluntarily redacted 47 hours of his own time

(9.2% of his total of 511.6 hours) from his request for attorney fees "in an effort to

mitigate potentially duplicative entries." Exh. 8, Pl.'s Mot. (Doc. No. 329-8) (Declaration

of Attorney Daniel Dalton). This voluntary reduction of 47 hours amounts to billing

reductions of $19,700. The court concludes that this voluntary reduction is sufficient to

account for duplicative work caused by Attorney Dalton's assuming the role of lead

counsel late in the litigation.

The defendants also argue that the Chabad unnecessarily hired Attorney Dalton,

who they describe as a "national expert with respect to RLUIPA matters," to try a case

that was neither factually complex nor legally sophisticated. Def.'s Mem. at 24. The

defendants assert that "Attorney Dalton's case could easily have been tried by any

number of competent counsel in Connecticut," which would have eliminated the need to

"spend $45,100 . . . on travel time by an out of state attorney for a three-day trial." Id.

"[E]xpenses and fees related to travel must be excluded from an award of attorneys'

fees if 'the hypothetical reasonable client who wishes to spend the least amount

necessary to litigate the matter . . . would have retained local counsel.'" U.S. ex rel.

Feldman v. Van Gorp, No. 03-CV-8135 (WHP), 2011 WL 651829, at *3 (S.D.N.Y. Feb.

9, 2011) (quoting Imbeault v. Rick's Cabaret Int'l, Inc., 08-CV-5458 (GEL), 2009 WL

2482134, at *8 (S.D.N.Y. Aug. 13, 2009)).

Based on the court's familiarity with this case, the court does not agree with the

defendants' characterization of this case as factually and legally straightforward.

Although the defendants point to the court's mandatory injunction as evidence of the

"final simplicity" of the case, the court notes that the mandatory injunction followed

seventy pages of factual findings and conclusions of law.  <u>See generally</u> Bench Ruling.

Furthermore, the Chabad submits evidence to support that there is a "dearth of plaintiffs

attorneys in Connecticut with sufficient knowledge of RLUIPA and experience

prosecuting a RLUIPA claim."  <u>See</u> Exh. 9, Pl.'s Mot. (Doc. No. 329-9) (Declaration of

Noel W. Sterett).  Although the defendants do not agree with that position, they have

provided no evidence to contradict it.  Therefore, the court concludes that a hypothetical

reasonable client would not have retained local counsel under the circumstances

presented here.

The defendants also challenge the number of hours for which counsel for the

Chabad billed related to the Motion for Attorney Fees and Costs.  The defendants

assert that Dalton & Tomich, LLC, billed $20,475, for time devoted to the petition for

attorney fees, and should only be awarded $2,454.95 for that work.  <u>See</u> Def.'s

Response at 26–27.

In support of this argument, the defendants cite the court to <u>Coulter v.

Tennessee</u>, 805 F.2d 146, 151 (6th Cir. 1986), for the proposition that the hours allowed

for preparing and litigating the attorney fee case should not exceed five percent of the

hours in the main case.  <u>See</u> Def.'s Response at 26–27.  However, the Sixth Circuit

reversed this holding in <u>Coulter</u> in 2016, concluding, among other things, that "the

presumptive cap mostly takes away the discretion afforded to the district court in the

statute" and is "inconsistent with the purpose of § 1988's fee-shifting provision, which 'is

to ensure effective access to the judicial process for persons with civil rights

grievances.'"  <u>Northeast Ohio Coalition for the Homeless v. Husted</u>, 831 F.3d 686, 720–

25 (6th Cir. 2016) (quoting <u>Hensley</u>, 461 U.S. at 429).  More importantly, the Second

Circuit has explicitly held that attorneys are entitled to fees for hours reasonably spent on attorney fee applications.  See Gagne v. Maher, 594 F.2d 336, 344 (2d Cir. 1979) ("[T]ime reasonably spent by plaintiff's attorneys in establishing their fee [is] compensable."); see also Hines v. City of Albany, 862 F.3d 215, 223 (2d Cir. 2017) ("Prevailing parties under Section 1988 are . . . entitled to recover a reasonable fee for preparing and defending a fee application.").

Although the court retains the discretion to reduce or refuse compensation for claims that are "exorbitant" or hours that are "unnecessarily high," the defendants have failed to provide either argument or authority for the proposition that anything in excess of five percent of the hours in the main case is unreasonable.  Gagne, 594 F.2d at 344. The court concludes that it would be inconsistent with the purpose of section 1988 and the reasonableness standard established in the Second Circuit to place a five percent cap on the award for time spent on the fee application.  Furthermore, upon review of the billing records submitted, the court finds that the hours billed for time spent on a fee application are reasonable.  By the court's calculation, Dalton & Tomich, LLC, devoted 86.6 hours to the Motion for Attorney Fees, which constitutes approximately 13.8 percent of the total 626.6 hours billed by Dalton & Tomich, LLC, attorneys.  However, the court notes that 76.1 of these hours were billed by Attorney Harrison, who billed at a rate of $150 per hour, while only 10.5 hours were billed by Attorney Dalton who billed at a rate of $410.  The total amount billed for work on the attorney fee petition by Dalton & Tomich, LLC, is $15,720, which constitutes 7.3% of the total amount billed by Dalton &

Tomich, LLC.[3]  Even relative to the amount billed by Dalton & Tomich, LLC, specifically, this proportion of the total billed is not exorbitant.  Furthermore, the court notes that Dalton & Tomich, LLC, and Attorney Harrison specifically, billed the majority of the hours devoted to the petition for attorney fees.  Viewing Attorney Harrison's hours in light of the litigation as a whole, the total hours devoted and amount billed constitute significantly less than 5% of the total hours billed in the case.  Therefore, the court will not reduce the award requested on this basis.

The defendants also make specific challenges to a significant proportion of the billing records submitted by counsel, including arguing that individual line items are clerical or non-legal work, are duplicates of previous line items, or were devoted to claims that failed early on in the litigation.  Upon review of the billing records and the challenges raised by the defendants, the court concludes that the billing records of Halloran & Sage, in particular, bill a small but significant number of hours of clerical or non-legal work to Attorneys Slater and Blatchley.  Furthermore, calculating the precise number of hours devoted to clerical work is impossible because of the billing records of Halloran & Sage, which routinely group a series of tasks, including clerical and non-clerical tasks, in single entries.  Therefore, the court reduces the hours billed by Attorney Slater by five percent (in addition to the ten percent reduction applied to account for duplicative efforts between Attorney Nelson and Attorney Slater) to account for the clerical or non-legal work for which Attorney Slater billed.  In addition, the court

---

[3] The court recognizes that this calculation is different from the defendants' conclusion as to the amount billed by Dalton & Tomich, LLC for work devoted to the Motion for Attorneys' Fees.  However, even if Dalton & Tomich, LLC, did bill a total of $20,475 for work related to an attorney fee petition, the court would have found that total reasonable for the reasons stated herein.

reduces the hours billed by Attorney Blatchley by five percent to account for the clerical or non-legal work for which he billed.

In addition, counsel at Halloran & Sage reviewed the defendants' line item disputes and withdrew several claims, including entries erroneously listed twice and entries that apply to a different matter. See Pl.'s Reply at 5. Based on these withdrawn claims, the court has removed 1.2 hours billed by Attorney Slater at his original rate of $350 per hour and 10 hours billed by Attorney Blatchley from the totals below.

The court has considered the additional challenges raised by the defendants and finds that they are either unsubstantiated or are adequately addressed through the reductions applied for duplicative work or partial success.

The totals calculated below are based on the analysis contained herein, as well as the court's independent review of the billing records. Where the court's calculation of the hours or billing total differed from that laid out in the Motion for Attorney Fees, the court relied on the records, not the brief. In particular, the court notes that Dalton & Tomich, LLC, requested $223,419.50 for 673.6 hours of work. However, upon review of the billing records submitted by Dalton & Tomich, LLC, the court identified records to support fewer hours—626.6—but, nevertheless, a higher total award, $231,430. As to the difference in total hours calculated, the court surmises that Dalton & Tomich, LLC, failed to subtract the 47 hours it offered to redact to account for duplicative work. With respect to the difference in total fee requested for Dalton & Tomich, LLC, the court has identified no explanation for the $223,419.50 figure proposed by the Chabad.

Finally, the court notes that, in reaching the conclusions contained herein, the court has considered its thorough knowledge of the procedural history, governing law,

and factual disputes. This court has presided over the case since its filing eight-and-a-half years ago. During those eight-and-a-half years, counsel for the Chabad opposed Motions to Dismiss and Motions for Summary Judgment, successfully appealed a Ruling of this court dismissing this case, and convinced this court through evidence and oral argument to conclude that the defendants substantially burdened the Chabad's religious exercise. Therefore, in addition to the arguments addressed explicitly in this Ruling, the court notes that it has also relied on its in-depth familiarity with the work of counsel for the Chabad, the goals of the plaintiff, and the degree to which those goals were achieved through the litigation that is at issue in this Motion for Attorney Fees.

Appendix A, attached to this Ruling, summarizes the court's findings in greater detail. See Appendix A, attached. In sum, the court awards attorney fees as follows:

| Firm | Timekeeper | Hourly Rate | Hours Awarded | Award |
|---|---|---|---|---|
| American Liberties Institute | Frederick Nelson | $410 | 1469.7 | $602,577.00 |
| | Nicole C. Myers | $350 | 29.5 | $10,325.00 |
| | Heather Dodge | $95 | 24.2 | $2,323.20 |
| | Satu E. Nelson | $70 | 46.7 | $3,269.00 |
| | American Liberties Institute Total | | | $618,494.20 |
| Halloran & Sage | Kenneth R. Slater | $350 and $375 | 367.4 and 167.5 | $196,479.75 |
| | Thomas C. Blatchley | $195 | 850.2 | $165,780.23 |
| | Ernesto A. Castillo | $150 | 37.6 | $5,640 |
| | Kelly McKeon | $150 | 15.2 | $2,280 |
| | Amanda Brosy | $175 | 14.6 | $2,555 |
| | Richard Roberts | $300 | 2.4 | $720 |
| | Enrico Costantini | $200 | 2.1 | $420 |
| | Daniel Krisch | $300 | 1.5 | $450 |
| | Halloran & Sage Total | | | $374,324.98 |
| Dalton & Tomich, LLC | Daniel P. Dalton | $410 | 464.6 | $190,486 |
| | Katharine Brink Harrison | $250 | 154.6 | $38,650 |
| | Zana Tomich | $310 | 7.4 | $2,294 |
| | Dalton & Tomich, LLC Total | | | $231,430 |
| **Fee Award Before Accounting for Partial Success** | | | | **$1,224,249.18** |
| **Final Fee Award** | | | | **$612,124.59** |

E.    Costs

The Chabad seeks $106,276.36 in costs expended during the litigation, including, for example, filing fees, travel expenses, long distance telephone charges, deposition expenses, photocopying expenses, and postage.  The defendants argue that the Chabad is only entitled to costs that are permitted by section 1920 of title 28 of the United States Code, which makes certain costs taxable but does not include many of the costs requested by the Chabad.  See Def.'s Response at 17–18; see also 28 U.S.C. § 1920.  The court concludes, however, that section 1988 and not section 1920 governs the Chabad's request for costs.  Courts routinely award costs in excess to those enumerated in section 1920, pursuant to section 1988.  See Kuzma v. I.R.S., 821 F.2d 930, 933–34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 . . . ."); Tolnay v. Wearing, No. 3:02-cv-1514 (EBB), 2007 WL 3171284, at *1 (D. Conn. Oct. 25, 2007) (noting that costs for travel fees and telephone expenses may be awarded under section 1988 but not Rule 54).

The court has reviewed the documents submitted by the Chabad in support of its request for costs, which reflect costs based on "ordinary out-of-pocket expenses such as travel, postage, and transcriptions."  Payne v. Kirkland, No. 14-CV-7098 (ALC), 2017 WL 5952707, at *5 (S.D.N.Y. Nov. 30, 2017); see Rai v. WB Imico Lexington Fee, LLC, No. 09-CV-9586 (PGG), 2017 WL 1215004, at **14–15 (S.D.N.Y. Mar. 31, 2017) (fees including court fees, filing fees, attorney travel expenses, and printing and binding fees reasonable under fee-shifting provision).  The court concludes that those costs are reasonable, with the exception of costs incurred by counsel for the Chabad in the administrative proceeding before the Commission, which costs were in the amount of

$995.00.  <u>See</u> <u>supra</u> Section II(C) (concluding that the Chabad is not entitled to attorney fees for the administrative proceeding).  Therefore, the court awards the Chabad $105,281.36 in costs.

### III.    CONCLUSION

For the reasons stated above, the Chabad's Motion for Attorney Fees is **granted**. The court awards a total of $611,662.09 in attorney fees, which reflects the lodestar calculation above, <u>see</u> <u>supra</u> Section II(D), divided in half to account for the partial success of the Chabad, <u>see</u> <u>supra</u> Section II(B).  In addition, the court awards $105,281.36 in costs, for a total monetary award of $717,405.95.

The Defendant's Motion for Permission to File Supplemental Information (Doc. No. 343) is **denied**.

**SO ORDERED**.

Dated this 23rd day of May 2018 at New Haven, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge